**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANN NUZZO and ALEX NUZZO,** ) | |
|         **Plaintiffs,** ) | **C.A. No. 18-107 Erie** |
| ) | |
| **v.** ) | |
| ) | **District Judge Susan Paradise Baxter** |
| **MICHAEL SPENCER, et al.,** ) | |
|         **Defendants.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

#### A. Relevant Procedural History

Plaintiffs Ann Nuzzo ("Nuzzo") and Alex Nuzzo ("Mr. Nuzzo"), her husband, filed this civil rights action on April 6, 2018, as the result of events that transpired on April 7, 2016, while Nuzzo was employed as a high school teacher for the Bradford Area School District. The named Defendants are: Michael Spencer ("Spencer"), a Bradford City police officer who, at all relevant times, also served as a school resource officer for the Bradford Area School District; Christopher Lucco ("Lucco"), Police Chief for the City of Bradford; David Ray ("Ray"), Principal of the Bradford Area High School; and Kenneth Coffman ("Coffman"), Vice Principal of the Bradford Area High School.

The complaint alleges a total of seven counts: Count I - false arrest and false imprisonment; Count II - excessive force; Count III - denial of medical care; Count IV - illegal search and seizure; Count V - conspiracy; Count VI - intentional infliction of emotional distress; and Count VII - loss of consortium. The claims of conspiracy (Count V) and loss of consortium

1

(Count VII) are asserted against all Defendants, while the remaining claims are asserted against Defendants Lucco and Spencer, only.

Pending before the Court is a motion to dismiss filed by Defendants Ray, Coffman, and Spencer, in his official capacity as a School Resource Officer for the Bradford Area School District (collectively, the "Moving Defendants"). The Moving Defendants contend that the claims against them must be dismissed because: (1) the conspiracy claim against Defendants Ray and Coffman is insufficiently pled; (2) Mr. Nuzzo's derivative loss of consortium claim is not cognizable; and (3) the official capacity claims against Defendant Spencer that would tie the Bradford Area School District to this case fail to establish a basis for municipal liability.[1] Plaintiffs have filed a brief in opposition to the motion, and Defendants have filed their reply. This matter is now ripe for adjudication.

## B. Relevant Factual History

As of April 7, 2016, when the events in question transpired, Nuzzo had been employed with the Bradford Area School District for nearly twenty years. (ECF No. 1, Complaint, at ¶14). On the morning of April 7, Nuzzo was in her classroom at the Bradford Area High School when Defendant Ray instructed her to accompany him to the administrative offices. (Id, at ¶¶16-17). On the way to the offices, Nuzzo inquired whether she could speak with her union representative in order to have her present, but Defendant Ray informed her that she was not allowed to have representation and that she needed to proceed to Defendant Coffman's office. (Id., at ¶¶18-19).

Once Nuzzo arrived at Defendant Coffman's office, she was confronted by Defendants Lucco and Spencer, who were in uniform and armed, and was advised that they had a search

---

[1] In their opposition brief, Plaintiffs clarify that they are only suing Defendant Spencer in his individual capacity and not in his official capacity. As a result, there is no need to address Defendants' motion to dismiss Plaintiffs' official capacity claims against Defendant Spencer.

2

warrant for her iPad because students had accused her of videotaping them without their permission. (Id., at ¶¶ 20-21). Nuzzo denied videotaping anyone and told the officers she did not know what they were talking about or where her iPad was located. (Id. ¶¶ 23-24). The officers repeatedly told Nuzzo that "this will all be over" if she produced the iPad or told them where it was, but Nuzzo repeated that she did not know the iPad's location. (Id. at ¶ 25). During this time, Nuzzo was confined in Defendant Coffman's office while her classroom was being searched. (Id., at ¶ 26). According to Plaintiffs, Defendants Lucco and Spencer attempted to intimidate Nuzzo by informing her that she was facing felony criminal charges, at which point Nuzzo became ill and went across the hall to vomit in the restroom. (Id., at ¶¶ 27-28).

While Nuzzo was vomiting, Defendants Lucco and Spencer knocked on the door, told her she was being detained, and yelled at her to come out. (Id., at ¶¶ 29-30). The officers then unlocked the bathroom door and sent the female school nurse in to summon Nuzzo out of the bathroom. (Id., at ¶ 31). After the officers ordered Nuzzo out of the bathroom, one of them grabbed a waste basket and told her that she had to stay in Defendant Coffman's office and that she could vomit into the waste basket if she got sick again. (Id., at ¶ 32). Nuzzo complied with the officers' directive and returned to Defendant Coffman's office where, once again, the officers informed her that "this could all be over if you just tell us where the iPad is," and Nuzzo repeated that she did not know where it was. (Id., at. ¶¶ 33, 35-36). At one point, Nuzzo gave the officers the keys to her car so that they could check to see if the iPad was there, but it was not. (Id., at ¶ 37).

When Nuzzo began experiencing stomach pain, she left Coffman's office and returned to the bathroom, where she began vomiting and having diarrhea. (Id., at. ¶¶ 38-39). Once again, Defendants Lucco and Spencer knocked on the bathroom door and informed Nuzzo that she was

3

being detained and could not stay in the restroom. (Id., at ¶ 40). The officers then unlocked and opened the bathroom door while Nuzzo was still sitting on the toilet and visible to people in the hallway, and the school nurse was again sent in to retrieve Nuzzo and return her to Defendant Coffman's office. (Id., at ¶¶ 41-44).

Once Nuzzo returned, the officers continued to question her about the whereabouts of the iPad, while Nuzzo continued to inform them that she did not know where she left it. (Id. at ¶¶ 45-46). At some point, Nuzzo began to feel dizzy and experienced numbness, chest pain, and difficulty breathing. (Id., at ¶¶ 47-48). Despite her distress, Defendants Lucco and Spencer did not summon the nurse for assistance. (Id. at ¶ 49). Fearing that she might be having a heart attack, Nuzzo told the officers that she needed to go to the hospital, which was located directly across the street from the high school, but Defendant Spencer refused because she was being detained. (Id., at ¶¶ 50-52). Insisting that she needed immediate medical attention, Nuzzo left the school grounds and proceeded toward the hospital entrance. (Id., at ¶¶ 53-54). Nuzzo made it as far as the ambulance canopy at the front of the hospital when she nearly collapsed due to difficulty breathing and was grabbed by Defendant Spencer. (Id., at ¶¶ 54-55).

Nuzzo was then taken by hospital personnel to the emergency department, where she proceeded to vomit again. (Id., at ¶ 56). Once she was stabilized, it was determined that she was not suffering a heart attack, and she was given medication to calm her nerves and help her breathe more easily. (Id., at ¶ 59). While Nuzzo was receiving medical attention, Defendants Lucco and Spencer continued trying to get information from her, and the attending physician had to ask the officers to move away from her. (Id., at ¶¶ 60-61). Defendant Spencer eventually obtained a warrant to search Nuzzo's home, and Defendant Lucco then conducted the search. (Id., at. ¶ 62).

At some point, Mr. Nuzzo arrived at the hospital and Nuzzo tried to give him some ideas as to where the iPad might be located. (Id., at. ¶ 63). After returning home, Mr. Nuzzo eventually found the iPad in a laundry basket and turned it over to the police. (Id., at ¶ 64). Nuzzo was discharged from the hospital that same day with a diagnosis of atypical chest pain and anxiety reaction, and was instructed to follow up with treatment for anxiety, panic attacks and chest pain. (Id., at ¶ 65). Later that evening, the Bradford City Police Department contacted Nuzzo at home and informed her that her iPad was clean and that she had been cleared of all criminal charges. (Id., at ¶ 66).

During the time that Nuzzo was confined in Defendant Coffman's office, Defendants Lucco and Spencer confiscated her cell phone without a warrant. (Id., at ¶ 67). When she later recovered her phone, Nuzzo discovered a message indicating that there had been multiple failed attempts to unlock it, suggesting that the officers had tried unsuccessfully to search the device. (Id., at ¶ 68).

Following the April 7, 2016 incident, Nuzzo was unable to return to her classroom. (Id., at ¶¶ 69, 71). Although she made attempts to return to teaching, she experienced problems related to chest pain and anxiety and discontinued her efforts on the advice of her doctors. (Id., at ¶ 71). Ultimately, Nuzzo took a medical disability sabbatical and retired from her position. (Id., at ¶ 76).

### C. Standard of Review

The Moving Defendants' motion to dismiss is predicated on Rule 12(b)(6) of the Federal Rules of Civil Procedure. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., citing Twombly, 550 U.S. at 556. In conducting a Rule 12(b)(6) analysis, the Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Wayne Land, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted) (alteration in the original).

## II. DISCUSSION

### A. Civil Conspiracy Claim v. Defendants Ray and Coffman

Count V of the complaint asserts that Defendants Ray and Coffman "acted in combination with" Defendants Lucco and Spencer "to illegally detain Mrs. Nuzzo in Mr. Coffman's office, to invade her privacy by twice unlocking the restroom door while she was sick, and [to] delay[ ] and/or deny[ ] her adequate medical care during her confinement in the administrative office, thereby violating her Fourteenth Amendment due process and Fourth Amendment rights." (Id., at ¶138).

"To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162,

6

1166 (3d Cir.1989). In addition, Plaintiff must plead enough facts to plausibly suggest a "meeting of the minds." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010). "As 'the linchpin for conspiracy is agreement,' concerted action, without more, cannot suffice to state a conspiracy claim." Watson v. Sec'y Pa. Dep't of Corrections, 436 Fed. Appx. 131, 137 (3d Cir. 2011), quoting Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992); see also Michtavi v. United States, 435 Fed. Appx. 727, 731 (3d Cir. 2009).

Here, Plaintiffs merely make the summary allegation that Defendants Lucco, Spencer, Ray and Coffman "acted in combination with each other" primarily based upon their actions on the day of the events at issue. In particular, Plaintiffs note that Defendant Ray directed Nuzzo to Defendant Coffman's office to be confronted by Defendants Lucco and Spencer, without apprising her of their presence beforehand, and Defendant Coffman made his office available for the officers to detain Nuzzo and subsequently assisted with the search of her classroom. However, these allegations establish nothing more than concerted action, with little hint of a prior agreement or "meeting of the minds" suggesting a conspiracy to violate Plaintiff's constitutional rights.

Plaintiffs also raise a number of allegations attempting to tie a previous incident to the alleged conspiracy. Specifically, Plaintiffs allege that during the time frame immediately preceding the events of April 7, 2016, Defendant Spencer was prosecuting two students who had damaged Nuzzo's car in the school parking lot. (ECF No. 1, at ¶ 134). After it was determined that another student was the driver of the two students who damaged Nuzzo's car, Mr. Nuzzo called the student-driver's mother to inform her of her son's involvement. (Id., at ¶¶ 135-136). After this call by her husband, Nuzzo was called into Defendant Ray's office and was severely

7

reprimanded for her husband's actions, ostensibly because the father of the student-driver was a member of the Bradford Area School Board. (Id. at ¶ 137). Taken as true, these allegations do not provide the connection necessary to support Plaintiffs' conspiracy claims; however, Plaintiffs will be permitted to amend their complaint to provide facts to connect the two events beyond speculation, to the extent they may be able to do so.

### B. Loss of Consortium Claim

The only other claim against Defendants Ray and Coffman is Mr. Nuzzo's loss of consortium claim. In particular, Plaintiffs allege that "[Mr. Nuzzo], as a result of the Defendants' actions that caused the injuries suffered by his wife, claims damages for loss of services, companionship and consortium suffered in the past and which will be suffered in the future." (ECF No. 1, at ¶ 150).

In general, "loss of consortium claims are derivative claims, and may proceed only upon the success of the underlying claim asserted by the spouse who has been harmed." Brodlic v. City of Lebanon, 2005 WL 2250840, at * 7 (M.D.Pa. Sept. 15, 2005), citing Pahle v. Colebrookdale TP, 227 F.Supp.2d 361, 375 (E.D.Pa. 2002) (citations omitted). "Thus, where the allegedly injured spouse fails to plead a cognizable claim, his spouse's claim for loss of consortium cannot survive." Quitmeyer v. Se. Pa. Transp. Auth., 740 F.Supp. 363, 370 (E.D.Pa. 1990), citing Little v. Jarvis, 280 A.2d 617 (Pa. Super 1971). Furthermore, it is undisputed that spousal loss of consortium claims based on violations of the other spouse's civil rights are not cognizable under Section 1983. See, e.g., Newlon v. Davis, 2014 WL 2199838, at *6-7 (W.D.Pa. May 27, 2014) (citations omitted). Thus, to the extent Mr. Nuzzo's loss of consortium claim is derivative of Nuzzo's underlying conspiracy claim against Defendants Ray and Coffman, it will be dismissed as against said Defendants.

8

Nonetheless, in their opposition brief, Plaintiffs argue that the loss of consortium claim should be allowed to proceed to the extent Mr. Nuzzo is alleging a violation of his own constitutional rights arising from the injuries sustained by Nuzzo. Both parties cite the fact that "the Third Circuit Court of Appeals has never directly addressed the issue of whether "a husband or wife can allege violations of his or her own constitutional rights under § 1983 for unlawful, government imposed injuries to a spouse that have a devastating impact on their marriage." Brodlic, at *7, citing Pahle, 227 F.Supp .2d at 381.

In addition, both parties acknowledge that there is a split among the district courts in the Third Circuit regarding a spouse's right to maintain an individual civil rights claim for loss of consortium under Section 1983; however, the most recent district court cases addressing the issue have found in favor of such actions. See, e.g., Brodlic, at * 8 (finding that, "as a result of government action, a wife can be deprived of her constitutional right to her husband's services and may bring an individual claim under § 1983"); Pahle, 227 F.Supp.2d at 280 (holding that "a spouse may assert a claim under §1983 that the government improperly interfered with her personal right to the services, society and companionship of her husband (i.e., consortium), denying her Due Process of law, to which she is entitled under the Fourteenth Amendment"). Based on these cases, this Court finds sufficient support for allowing a spouse's loss of consortium claim under Section 1983, based on the Fourteenth Amendment Due Process Clause.

That being said, despite Plaintiffs' assertions in their opposition brief, it is far from clear that Plaintiffs have sufficiently pleaded such a claim on behalf of Mr. Nuzzo in the operative complaint. Thus, Plaintiffs will be allowed to amend their complaint to more clearly define Mr. Nuzzo's loss of consortium claim under Section 1983.

An appropriate Order follows.